**Roberta McLAREN, Plaintiff,**

v.

**IMPERIAL CASUALTY AND INDEMNITY COMPANY, et al., Defendants.**

**Civ. A. No. 4–90–460–A.**

United States District Court, N.D. Texas, Fort Worth Division.

Feb. 12, 1991.

1366

Arthur John Brender, Brender & Colosi, Fort Worth, Tex., for plaintiff.

John Dennis Weitzel, Burleson Pate & Gibson, Dallas, Tex., Randy Jarvis Hall, Decker Jones McMackin McClane Hall & Bates, Anne Lancaster Gardner, Shannon Gracey Ratliff & Miller, Fort Worth, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

This is a diversity action. Texas substantive law controls. Roberta McLaren ("McLaren") is plaintiff, and Imperial Casualty and Indemnity Company ("Imperial"), Special Risks, Inc., ("Special") and Russell Grace, Inc., ("Grace") are defendants. The matters that are before the court for ruling are (1) Special's motion to dismiss the complaint as to it because of lack of personal jurisdiction; (2) McLaren's motion for summary judgment; (3) Special's motion for summary judgment; (4) Imperial's motion for summary judgment; and (5) Grace's motion for summary judgment.

The court has concluded that Special's motion to dismiss should be denied, that McLaren's motion for summary judgment should be denied, and that defendants' motions for summary judgment should be granted.

### Nature of the Litigation

A rather simple dispute over liability insurance coverage is at the heart of this action. As is so often true in cases of this sort, the simple coverage dispute comes to the court clothed in legal garb woven with a multitude of legal theories designed to maximize the gain by McLaren from any possible misstep by the insurer and to impose on the non-insurer defendants basically the same liability sought to be imposed on the insurer defendant because of their alleged relationships to the insurance coverage dispute.

*The Insurance Coverage:*

Imperial, the insurer defendant, issued to Bedford Police Department and City of Bedford, as the "Named Insureds", a liability insurance policy bearing the title "Law Enforcement Professional Liability Insurance" ("policy"). Exhibit "G" to Amended Complaint. Persons and entities who were "Insureds" to whom liability insurance coverage potentially was afforded by the policy were, *inter alia*, Bedford Police Department, City of Bedford and employees of each. *Id.* at page 1.

Imperial promised in the insuring clause of the policy that, subject to other provisions, limitations and exclusions contained in the policy, it would:

> ... pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of *wrongful acts* arising out of Law Enforcement activities.

*Id.* at page 1 (emphasis added). The term "wrongful act", as used in the insuring clause, is defined in the policy to mean:

> WRONGFUL ACT Means only or all of the following: Actual or alleged error, misstatement or misleading statement, omission, neglect or breach of duty by the Insured individual or collectively, *while acting or failing to act within the scope of his employment or official duties pertaining to the law enforcement functions of the Insured;*

*Id.* at page 2 (emphasis added).

The insuring clause goes on to provide that the coverage of the policy extends, subject to the terms and provisions of the policy, to (a) legal liability of the insured to pay damages because of personal injury or bodily injury and (b) punitive damage, where permitted by law. The terms "Bodily Injury" and "Punitive Damage" are defined in the policy in ways that are not relevant to the court's rulings. The term "Personal Injury" is defined in the policy as follows:

> PERSONAL INJURY Means false arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, assault and battery, libel, slander, defamation of character, discrimination, mental anguish, wrongful entry or eviction, violation of property or deprivation of any rights, privileges or immunities secured by the Constitution and Laws of the United States of America or the State for which the Named Insured may be held liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress. However, *no act shall be deemed to be or result in personal injury unless committed in the regular course of duty by the Insured.*[1]

*Id.* at page 3 (emphasis added).

Thus, the policy language leaves no doubt that its coverage as to a person who is an "Insured" because of his employment by Bedford Police Department or City of Bedford as a law enforcement officer extends only to an obligation he has to pay damages that has resulted from an act or

---

1. A proper reading of the "Personal Injury" definition probably leads to the conclusion that the coverage applicable to "Personal Injury" extends only to the "Named Insured." However, for the purpose of this memorandum opinion, the court is assuming, *arguendo,* that the "Personal Injury" part of the coverage extends, subject to the terms and provisions of the policy, to each person who qualifies as an "Insured" under the policy.

omission he has committed "while acting or failing to act within the scope of his employment or official duties pertaining to law enforcement functions" arising out of law enforcement activities. The policy language makes perfectly clear that its coverage does not extend to liability for damages if the liability is the product of a personal lark or venture of the insured that occurred during his deviation for a personal reason from the performance of his law enforcement duties.

Another obligation undertaken by Imperial under the policy was to defend any claim or suit brought against an insured "seeking damages on account of such wrongful acts." *Id.* at page 1. The use of the term "such wrongful acts" obviously has reference to the "wrongful acts arising out of Law Enforcement activities" that are mentioned in the insuring clause. So, when the definition of "wrongful acts" is taken into account, the policy says that the insurer's defense obligation exists only when the claims or suit against the insured are the result of an act or omission by the insured "while acting or failing to act within the scope of his employment or official duties" arising out of law enforcement activities.

The policy language that is determinative of this case is clear and unambiguous and would be understood by any reasonably intelligent person.

*Facts upon which the Claim of Insurance Coverage is Based:*

The core of McLaren's complaint, as amended, is a claim that a police officer of City of Bedford by the name Larry Taylor ("Taylor") was an insured under the policy and that the policy extended liability insurance protection to Taylor in respect to claims McLaren had against him because of a sexual assault Taylor inflicted on her in April 1985. McLaren incorporates in her complaint the contents of a written statement she made shortly after the event, in which she gives explicit details of her encounter with Taylor. Amended Complaint, page 2 and Exhibit "A." An abbreviated, less lurid account follows:

After an evening of entertainment on April 22, 1985, with friends, and as she was driving on a freeway in Bedford, Texas, McLaren was stopped by Taylor, a Bedford police officer. At the direction of Taylor, she exited her car, displayed her driver's license and underwent a sobriety test, which, apparently, she passed. Upon discovering that McLaren did not have proof of liability insurance with her, Taylor gave her a ticket for no liability insurance. Taylor then told McLaren to get in her car and follow him, without further explanation. She followed him off the freeway to a deserted area, where Taylor pulled into a parking lot near industrial buildings. Taylor told McLaren to exit her car and enter his. As she was in the process of doing so, Taylor told her to step back as another car went by, and then he told her to come on around and get in his car. She inquired as to whether she should get in the front or back, and followed his directions when he told her enter the front. After she was in the front seat Taylor told her to pull her dress up. She pulled it all the way up like he told her to. Then, he told her to unhook her bra and raise it up, which she did. Taylor then stared at her and made complimentary comments about her endowments, at which point the thought passed her mind that Taylor's conduct seemed crude. Next, Taylor unzipped his pants and proceeded to force Taylor to perform an oral sex act on him. Once the act was completed and McLaren straightened out her dress, Taylor altered the traffic ticket and told her that he was going to give her a citation for no driver's license and that she would be able to take it to the judge with her driver's license and have it dismissed. When she inquired as to whether she could leave, Taylor told her that she could. She went to her car. Taylor told her to stand by her car until he had left.

Taylor's conduct led to a criminal indictment and his conviction on the offense of sexual assault.

*The State Court Suit and Events Related to it:*

In the process of attempting to parlay the unfortunate event she describes in her

complaint into a joint and several recovery from defendants of approximately $25,000,000.00, McLaren, in cooperation with Taylor, has employed techniques that have become all too familiar in the legal community.

The first overt act was the giving by Taylor of notice to Imperial, Special and Grace of the existence of McLaren's claims against him. McLaren fortified the notice by giving a notice of her own, which told of her intent to file suit against Taylor if her claims were not resolved. When Imperial, quite understandably in view of the policy language, did not accede to the demands that it make payment to McLaren on behalf of Taylor, McLaren filed a damage suit against City of Bedford and Taylor in a state district court.[2] The damage suit pleading revealed on its face that the claims by McLaren against Taylor arose from personal conduct on the part of Taylor, unrelated to any law enforcement goal. Basically, the pleading gave a short version of the April 1985 encounter between McLaren and Taylor that is described in the written statement mentioned above. The pleading made clear that McLaren's causes of action against Taylor were based on the encounter thus described, and went on to complain that Taylor's restraint of McLaren was "devoid of any lawful justification whatsoever." Exhibit "C" to Amended Complaint, pages 1–2.

Taylor made demand on Imperial to assume his defense in the damage suit. Imperial declined. That left McLaren and Taylor to their own devices in the handling of the state court litigation. The next prop in the scenario was the taking by McLaren in June 1989 of something in the nature of a default judgment against Taylor in the damage suit for $7,018,045.00 (actual damages of $2,000,000.00, punitive damages of $5,000,000.00 and attorney's fees of $18,045.00), plus interest on $2,000,000.00 at the rate of ten percent per annum, compounded annually, from April 25, 1985, plus interest on the full amount of the judgment at the rate of ten percent per annum, compounded annually, from date of judgment until paid.[3] Presumably after the judge presiding over the damage suit had been persuaded to sign the judgment, Taylor assigned to McLaren "any and all cause (sic) of action that he had against the insurance company and/or companies, their agents, or employees who either insured, adjusted, represented or misrepresented and/or failed to properly adjust and/or defend him for liability during the time he was a police officer for the City of Bedford...." Plaintiff's Amended Complaint, page 4.

## McLaren's Claims Before this Court:

The instant action was brought by McLaren as assignee of Taylor. Not only does McLaren seek to recover the amount of the damage suit judgment, she asks for recovery of treble that amount plus attorney's fees she will incur in the prosecution of this action. She complains in her amended complaint of Imperial's failure to pay her claims against Taylor and its failure to defend her suit against Taylor. Liability is sought to be imposed on Grace because of its participation in causing the policy to be issued. Her complaint against Special arises from a role it had in adjusting her claims against Taylor.

All the alleged wrongs about which McLaren complains in this action are said by her to have been committed against Taylor. She seeks to recover as Taylor's assignee what she alleges he could have recovered if he had not assigned his claims to her.

## Summary Disposition is Appropriate in this Action

This action is particularly suited for summary disposition under the rules and standards expressed by the Supreme Court in *Matsushita Electric Industrial Co. v. Ze-*

---

2. After the suit was filed McLaren reached a settlement with City of Bedford and caused it to be dismissed from the suit, leaving Taylor as the sole defendant.

3. The judgment recites that Taylor "wholly failed to appear for trial, and the plaintiff waived a jury trial, and tried to the Court her case against the defendant Mr. Taylor." Exhibit "F" to Amended Complaint.

*nith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the blunderbuss allegations of McLaren's amended complaint are carefully scrutinized, and the chaff is brushed aside, her claims are seen to be totally without merit. For the most part, the lack of merit is affirmatively demonstrated by McLaren's amended complaint and the exhibits accompanying it. Other of her claims are proved unmeritorious by affidavits and other parts of the summary judgment record. The rest of her claims fall by the wayside because of her failure to come forward with summary judgment evidence after the existence of evidence to support the claims was challenged by one or more of defendants' motions. *See International Ass'n of Machinists & Aerospace Workers v. Intercontinental Manufacturing Co.*, 812 F.2d 219, 222 (5th Cir.1986).

*The Policy Does Not Provide Coverage to Taylor for Claims Resulting from his Encounter with McLaren*

■ Bearing in mind the policy definition of "wrongful acts", the fact of non-coverage is self-evident from the policy language. McLaren's claims against Taylor do not in any shape, form or fashion arise from any act or omission on the part of Taylor within the scope of his employment or official duties pertaining to law enforcement functions arising out of law enforcement activities.

The ultimate issue in *City of Green Cove Springs v. Donaldson*, 348 F.2d 197 (5th Cir.1965), was whether a sexual assault committed by a police officer during his duty hours on a person he had detained in the course of his police work was committed within the scope of his employment. A related question was whether the scope of employment issue should have been submitted to the jury. Each of these questions was answered in the negative. The Fifth Circuit held that the facts, construed most favorably to the plaintiff, would admit of no inference "other than that in his

rape of the plaintiff, Officer Moseley stepped aside from his employment to accomplish his own, rather than the City's purpose." 348 F.2d at 203.

The same result was reached in *Mary M. v. City of Los Angeles*, 225 Cal.App.3d 666, 246 Cal.Rptr. 487 (1988). In that case Mary M. had been raped by a Los Angeles police officer during his working hours. The court held as a matter of law that the officer's rape of Mary M. "did not take place within the scope of his employment." 246 Cal.Rptr. at 499.

Principles of law adopted by Texas courts governing the master and servant relationship would cause a Texas court to reach the same results that were reached by the Fifth Circuit and the California court. In *Smith v. M System Food Stores*, 156 Tex. 484, 297 S.W.2d 112 (1957), the Texas Supreme Court held that as a matter of law a police officer was not acting within the scope of his employment when he assaulted an acquaintance of a woman he had detained for shoplifting. The Texas test for scope of employment in the context of the facts presented in *Smith* was expressed by the court as follows:

> To be within the scope of employment "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." Restatement of the Law of Agency, Sec. 229. In *Home Telephone & Electric Co. v. Branton*, Tex.Civ.App., 7 S.W.2d 627–629, in an opinion by our present Chief Justice, then on the Court of Civil Appeals, the rule was said to be that: " * * * where the act of the servant is not in the furtherance of the master's business, or for the accomplishment of the object for which he was employed, but is performed as a resentment of insults, or in the furtherance of personal animosities of the servant, the master is not liable."

297 S.W.2d at 114. *See also Rosales v. American Buslines, Inc.*, 598 S.W.2d 706 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.); *Gifford–Hill & Co., Inc. v. Moore*, 479 S.W.2d 711 (Tex.Civ.App.—Tyler 1972, no writ); and *Sheffield v. Central Freight*

*Lines, Inc.,* 435 S.W.2d 954 (Tex.Civ.App.—Dallas 1968, no writ).

Applying the principles of *Smith* to the instant action, the acts of Taylor about which McLaren complains were not within the scope of his employment because they were not in the furtherance of the business of City of Bedford or for the accomplishment of the object for which he was employed, but, instead, they were committed in the furtherance and gratification of personal desires and impulses of Taylor. From those conclusions there naturally follows the conclusion that the illegal Taylor–McLaren encounter was not an act or failure to act on the part of Taylor "within the scope of his employment or official duties pertaining to the law enforcement functions of the Insured" arising out of law enforcement activities. Therefore, the coverage of the policy does not extend to Taylor as to claims arising from the encounter.

In an affidavit McLaren filed with her responses to the defendants' motions, she puts emphasis on the circumstances that Taylor was equipped with a large pistol and was in a marked police car, that she assumed that she was being arrested when Taylor told her to follow him, that Taylor put his hand on his revolver after she entered his vehicle, that the lights and police radio remained on while she was in the car, and the like. If the point of the affidavit is to prove that the assault was within Taylor's apparent duties as a police officer, it not only is absurd, but it has missed the point. The policy coverage does not extend to conduct an injured party might perceive to be within the scope of the officer's duties unless the conduct is, in fact, as it is perceived to be. In other words, the coverage relates to scope of employment and not apparent scope of employment.

McLaren places emphasis in her summary judgment papers on risks that are included in the "Personal Injury" definition in the policy. This fails to take into account that the question of coverage, *vel non,* for "Personal Injury" is not reached

if the activity of which complaint is made is not, as is required by the insuring clause, a "wrongful act[s] arising out of Law Enforcement activity." Moreover, even if the "wrongful act" hurdle could be overcome by McLaren, she still would be faced with the last sentence of the "Personal Injury" policy definition, which says that "no act shall be deemed to be or result in personal injury unless committed in the regular course of duty by the insured." For all the reasons previously given, the conduct of Taylor about which McLaren has complained clearly was not committed in the regular course of his duty as a law enforcement officer.

■ Next, McLaren contends that defendants are prohibited from questioning existence of scope of employment at the time of the encounter because, she argues, the award of attorney's fees made to her in the June 1989 damage suit judgment was made pursuant to 42 U.S.C. §§ 1983 and 1988, which means, according to her reasoning, that the state district court adjudged that Taylor was acting under color of state law at the time of the encounter and, therefore, was acting within the course of his employment. The court does not need to evaluate the correctness of McLaren's argument as to the kind of adjudication the state court made in connection with the award of attorney's fees [4] because the defendants in this action would not in any event be bound by any state court adjudication against Taylor of issues pertinent to coverage under the policy.

A holding of the Texas Supreme Court in *Employers Casualty Co. v. Block,* 744 S.W.2d 940 (Tex.1988), was that a liability insurer that has not participated in the defense of a damage suit brought against its insured is not bound by adjudications in the damage suit judgment on issues that determine coverage. As does Imperial in the instant case, the insurer in *Block* asserted non-liability to its insured as to a damage suit judgment because of policy provisions that caused it not to have cover-

---

**4.** "Under color of state law" does not necessarily equate to "scope of employment." *See Brown v.*

*Miller,* 631 F.2d 408, 411 (5th Cir.1980).

age. The insured and the damage suit plaintiff contended that *res judicata* and collateral estoppel resulting from the damage suit judgment prevented Employers Casualty from litigating coverage facts in a later suit brought against the insurer for recovery of the amount of the judgment.

In *Block*, the Texas Supreme Court expressed approval of the 1978 Texas Court of Appeals decision in *Hargis v. Maryland American General Insurance Co.*, 567 S.W.2d 923 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.), which held that the questions of liability of the insured and of coverage are separate and distinct, and that a prior judgment establishing liability against the insured is not binding on the insurer as to the issue of coverage. The Supreme Court noted that in *Hargis* the Court of Civil Appeals was dealing with a judgment resulting from litigation, but said that "[i]t is apparent that the reasoning of the court applies as much, if not more, to agreed judgments." 744 S.W.2d at 943. In the course of holding that Employers Casualty was not bound by adjudications made in the damage suit judgment, the court said in *Block* that:

> Likewise, in light of the fact that the respective positions of CSI [the insured] and Employers Casualty regarding coverage were in conflict, no privity existed between the parties, thus precluding the application of the collateral estoppel doctrine. *See* Restatement (Second) of Judgments § 58(a) (1982). Therefore, we conclude that Employers Casualty should not be precluded from litigating the issue of coverage in the present case.

744 S.W.2d at 943. For the same reasons, none of the adjudications pertinent to coverage that are expressed or implied in the damage suit judgment against Taylor are binding on the defendants in this action.

*McLaren's Arguments that the Policy Imposed a Defense Obligation even Though the Claims Did Not Arise from "Wrongful Acts"*

■ In her response to defendants' motions for summary judgment, and as the ground for her own motion, McLaren argues that under Texas law Imperial had a duty to defend the damage suit because of the allegations she made in the damage suit petition. According to her, the duty to defend would exist despite conclusive proof that the policy did not provide coverage.

The so-called "allegations of the complaint" rule is generally stated to be that the existence of the defense duty depends upon the allegations of the underlying complaint against the insured without regard to the true facts. A careful analysis of the Texas cases discloses that if the rule were to be applied to this case it would operate in favor of defendants but that, in fact, it should play no role in a coverage dispute of this kind.

The rule is limited in the reported cases to two kinds of situations. One is where the insurance company seeks to avoid the defense obligation on the ground that extrinsic facts establish that the insured is *not liable* in the underlying suit. In that situation, the courts hold that the insurer must defend anyway. It cannot avoid defense merely because extrinsic facts show non-liability of its insured. The policy itself says it must defend even if the allegations are groundless, false or fraudulent. The leading case is *Heyden Newport Chemical Corp. v. Southern General Insurance Co.*, 387 S.W.2d 22 (Tex.1965), in which the underlying damage claim against the insured was based on allegations that the actual wrongdoer, whose negligence was alleged to have caused the damage, was the agent of the insured. The insurance company denied coverage on the ground that the true facts showed that, despite the allegations, the negligent wrongdoer was *not* the agent of the insured and that consequently the insured was not liable. This was the context in which the Supreme Court held that the allegations of the petition were controlling and that the insurance company owed a defense. The company did not even assert a policy exclusion or other coverage defense.

The second situation in which the rule has been applied is where the underlying complaint affirmatively alleges a set of

facts that fall within an exclusion to the policy coverage or are otherwise outside of the coverage. The insurer need not defend because the policy, as in the present case, requires the company to defend only those suits "seeking" damages that are payable under the policy. For example, in *Argonaut Southwest Insurance Company v. Maupin*, 500 S.W.2d 633 (Tex.1973), the underlying complaint was construed by the court to allege an intentional act. The court held the company was not obligated to defend because the complaint on its face alleged conduct that was outside the coverage of the policy.

An illustration of both kinds of situations is seen in *Maryland Casualty Co. v. Moritz*, 138 S.W.2d 1095 (Tex.Civ.App.—Austin 1940, writ ref'd), in which the court heavily relied in the *Heyden* case. In *Moritz*, Klein, the insured's truck driver, had exchanged that truck for one owned and driven by one Neilson before the accident that gave rise to the underlying claim. Thus, Klein was driving Neilson's truck, Neilson was driving the insured's truck, and both proceeded along, one behind the other, until the Neilson truck being driven by Klein collided with a third vehicle, killing its occupant. The insurance company refused to defend the insured. He successfully defended and then sued for cost of defense.

The court observed that if the allegations in the underlying death action had been limited to stating a cause of action for Klein's negligence in operating the Neilson truck, the insurance company would have been correct in its refusal to defend because the underlying petition would have affirmatively showed that the Neilson truck being operated by Klein was not covered by the policy. However, the court explained that the petition further alleged that Klein had retained control of the insured's truck, even though he was not driving it, and that, in the course of that agency for the insured, his negligence also contributed to the accident. Since the allegations concerning his control and negligence related to liability, not coverage, the company owed a defense obligation.

■ The pleading by which the damage suit in the instant case was filed and prosecuted made the following allegations:

Plaintiff Roberta E. McLaren drove her car east along Airport Freeway and into the City of Bedford, Texas, the late evening of April 22nd or the early morning of April 23rd, 1985. There, in Bedford, Ms. McLaren was stopped by a man, a police officer of the City of Bedford, Defendant Larry W. Taylor. He asked, in apparent performance of police functions and under color of his office, that she step from her car and submit to a quite short field sobriety test.

Still in apparent performance of police functions and under color of his office, Officer Taylor then instructed Ms. McLaren to take her car, and follow closely behind his police car. He led her to a parking lot, dark and deserted and off the highway, and still in apparent performance of police functions and under color of his office, Officer Taylor instructed her this time to leave her car and get into the front seat of the police car.

There, armed, Officer Taylor lifted Ms. McLaren's dress, demanded that she unclasp and remove her bra, exposed his sexual organ and grabbing hold of the back of her head, forced his sexual organ into Roberta McLaren's mouth, and in her mouth and on her face, ejaculated.

Then, Officer Taylor released her.

Exhibit "C" to First Amended Complaint, pages 1–2. The damage suit petition went on to allege that Taylor's restraint of McLaren was "devoid of any lawful justification whatsoever." *Id.* at page 2. These allegations state facts that affirmatively establish noncoverage because the only reasonable conclusion that can be reached from the allegations is that the liability sought to be imposed on Taylor is not on account of "wrongful acts arising out of Law Enforcement activities", as those words are used in the insuring clause of the policy. Conclusory "scope of employment," or the like, allegations cannot prevail over the precise factual allegations that show positively that McLaren's claims arise from a purely personal venture of

Taylor. Therefore, if the "allegations of the complaint" rule were to be given effect in this action, it would apply in favor of the defendants.

██ Moreover, there appears to be a more general rule that the true facts always can be used to establish non-existence of a defense obligation, no matter what the plaintiff might allege in her damage suit complaint. In *Gonzalez v. American State Insurance Co. of Texas*, the court explained:

> Where the insurance company refuses to defend its insured on the ground that the insured is not *liable* to the claimant, the allegations in the claimant's petition control, and facts extrinsic to those alleged in the petition *may not be used* to controvert those allegations. But, where the basis for the refusal to defend is that the events giving rise to the suit are *outside the coverage* of the insurance policy, facts extrinsic to the claimant's petition *may be used* to determine whether a duty to defend exists.

628 S.W.2d 184, 187 (Tex.App.—Corpus Christi 1982, no writ) (discussing *Fort Worth Lloyds v. Garza*, 527 S.W.2d 195 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *International Service Insurance Co. v. Boll*, 392 S.W.2d 158 (Tex.Civ. App.—Houston 1965, writ ref'd n.r.e.); and *Cook v. Ohio Casualty Insurance Company*, 418 S.W.2d 712 (Tex.Civ.App.—Texarkana 1967, no writ)). Another case so holding is *Massachusetts Bonding and Insurance Co. v. Roessler*, 112 S.W.2d 275 (Tex. Civ.App.—Fort Worth 1937, writ dismissed). *See also Blue Ridge Insurance Co. v. Hanover Insurance Co.*, 748 F.Supp. 470 (N.D.Tex.1990).

As the court noted in *Hagen Supply Corp. v. Iowa National Mutual Insurance Co.*, 331 F.2d 199 (8th Cir.1964), the "alle-gations of the complaint" rule simply does not apply when the issue to be decided is whether there is coverage, as distinguished from whether there is liability on the part of the insured. The court explained:

> The general rule is that an insurance company under a provision requiring it to defend an action, even if it is groundless, false or fraudulent, is under no duty to defend a claim which is outside the coverage provided by the policy.

331 F.2d at 203–04. While the court decisions are not uniform on the subject under discussion, they generally support the rule expressed by the Texas court in *Gonzalez* and the Eighth Circuit in *Hagen Supply Corp.*[5]

Under this rule, even if McLaren's damage suit pleading could be read to allege facts that, if true, would cause coverage to exist, Imperial nevertheless would not have a duty to defend the suit because the facts alleged would be false. As previously noted in this opinion, the defense feature of the policy expressly states that the duty to defend is applicable only to claims or suits against the insurer seeking damages on account of "such wrongful acts." The policy language that defines the duty to defend is as follows:

> [T]he Company shall have the right and duty to defend any claim or suit against the Insured *seeking damages on account of such wrongful acts,* even if the allegations of the claim or suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.

Exhibit "G" to Amended Complaint (emphasis added).

The words that are dispositive of the matter under discussion are "seeking damages on account of such wrongful acts."[6]

---

**5.** A collection of cases on this subject, and the subject of damages recoverable for breach of duty to defend, is found in an annotation at 49 A.L.R.2d 694, entitled "Consequences of liability insurer's refusal to assume defense of action against insurer upon ground that claim upon which action is based is not within coverage of policy." Court decisions in point to the issues under discussion are in § 5 of the later case service pertaining to the annotation. A.L.R.2d Later Case Service, Supplementing 49–52 A.L.R.2d, pages 64–65.

**6.** There are variations of defense clause language in insurance policies. Any version that conditions duty to defend on the existence of claims and suits seeking damages on account of the insuring clause coverages would have the same effect as the language in question.

There is no reasonable interpretation that can be given to this policy language other than that the duty to defend exists only if the claim or suit against the insured is one "seeking damages on account of such wrongful acts." Consequently, no matter what the allegations of the damage suit pleading might have been, Imperial did not have a defense obligation unless, in fact, the acts upon which the claims against Taylor were asserted were ones "seeking damages on account" of "wrongful acts arising out of Law Enforcement activities." The "even if the allegations of the claim or suit are groundless, false or fraudulent" part of the defense clause is not even reached for consideration if the condition precedent to the duty to defend ("suit against the insured seeking damages on account of such wrongful acts") has not been satisfied. The "groundless, false or fraudulent" language refers to the integrity of liability allegations against an insured and not to the quality of allegations in a damage suit pleading of facts that bear on whether there is coverage that would cause the insurance company to have a duty of defense.

A holding that extrinsic evidence of noncoverage may be used to refute the obligation to indemnify, but may not be used to refute the obligation to defend, when, under the language of the policy, neither obligation arises unless there has been a "wrongful act[s] arising out of Law Enforcement activities," would make no sense. The wording of the defense obligation contained in the policy leaves no doubt that the intent of the policy is that a defense obligation exists only when there will be a payment obligation for a judgment that might be rendered in the damage suit.

Imperial had no duty to defend the claims or suit by McLaren against Taylor. Therefore, no liability can be imposed on any of the defendants because of Imperial's failure to defend.

### Another Reason why Summary Judgment is Appropriate as to the "Duty to Defend" Claims

█ Another reason why the failure to defend theory cannot survive a defense mo-

tion for summary judgment, or support McLaren's, is that there is no summary judgment evidence that Taylor was damaged by the failure. There is nothing in the record to indicate that Taylor incurred any legal or other expense or suffered other compensable damage because of Imperial's declination to defend. Even if one assumes the existence of a duty to defend, there still would not be a duty to pay the amount of the damage suit judgment because the events giving rise to the judgment are outside the scope of Imperial's promise to pay, as contained in the insuring clause. When an insurer's only breach is of a duty to defend, and there is no payment obligation under the policy, the insurer obviously would not have any obligation to settle or pay the claim against its insured. Its sole obligation would be to provide a defense to the insured, and the sole remedy of the insured for breach of the defense duty would be to recover damages, such as legal expenses incurred by the insured in providing his own defense, suffered by the insured because of the insurer's breach of its promise to defend.

A case of pure breach of duty to defend, which does not at the same time involve the breach of a promise to pay or settle, presents quite a different situation from those dealt with in the cases such as *Blakeley v. American Employers' Insurance Co.*, 424 F.2d 728 (5th Cir.1970), and *Employers National Insurance Co. v. Zurich American Insurance Co.*, 792 F.2d 517 (5th Cir.1986). If the duty to defend is the only one breached, the damages recoverable for the breach ordinarily will correspondingly be limited. The arguments and authorities presented by McLaren on this subject are a mismatch of failure to pay, failure to settle and failure to defend concepts and results. McLaren's Motion for Summary Judgment, pages 10–13. Each of those failures has separate and distinct consequences, though, as McLaren has done, some of the court decisions have mixed and blended them in a confusing and improper way.

This discussion relative to damages is somewhat academic because there seldom

would be a duty to defend if there is no coverage, i.e., no duty to pay. Nevertheless, the absence of evidence of damages would provide a ground for summary judgment on the duty to defend theory even if there had been breach of a duty to defend in this case.

### McLaren's Contentions Related to Non–Approval by the State Board of the Policy Form

McLaren alleges that the policy is of a kind that required approval of the State Board of Insurance of Texas; that it was not approved; that Texas law holds that a company wrongfully failing to submit its insurance policies for approval is estopped from claiming that the policies are void when a claim is made against them; but, that, nevertheless, any exclusionary language in the policies is null and void and cannot be used to defeat the claim of an insured under the policy. Amended Complaint, pages 12–13. At another point in her complaint, as amended, McLaren alleges that the failure to have the policy approved by the State Board estops defendants from denying coverage or from claiming any exclusion in or defense to the policy. *Id.* at 15. Other allegations make non-specific complaints against each of the defendants in reference to non-approval of the policy form. *Id.* at 16–18.

The summary judgment record does have evidence that the form of the policy was not approved by the State Board. Except for motor vehicle insurance policies, there is no standard or uniform policy form required in Texas for use in writing casualty or liability insurance. Tex.Ins.Code Ann. art 5.06 & 5.15 (Vernon 1981 & Supp.1991). *Travelers Insurance Co. v. Chicago Bridge & Iron Co.,* 442 S.W.2d 888, 893 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.). The filing of forms and rates for casualty insurers, including law enforcement professional liability insurers, is governed by article 5.15 of the Insurance Code, which is entitled "Filing of Rates and Rating Information; Approval." Article 5.15 speaks not to filing or approval of

forms but to rates and "rating information." In *Chicago Bridge & Iron Co.,* the court observed that the primary purpose of the Legislature was not the approval of policy forms but approval of premium to be charged. 442 S.W.2d at 894. In that case, the Texas court enforced the policy (endorsement) language in its entirety notwithstanding its non-approval. The court noted that "it should not follow that no insurance is provided to the insured by reason of the insurer's violation of the law." *Id.* at 894.

*Chicago Bridge & Iron Co.* does not, as McLaren suggests in her summary judgment papers, hold that exclusions in a non-approved policy form of this kind cannot be enforced by the insurer. Its holding is just the opposite. Obviously, when an insured seeks to enforce a policy such as this, as Taylor, through McLaren, is seeking to do in this case, the insured cannot select the good and discard the bad. Instead, he must take or leave the policy in its entirety. In this instance, McLaren, as Taylor's assignee, has chosen to take it, and she has taken it with all of its terms and provisions.

Furthermore, the policy language that causes McLaren not to have a cause of action under the policy is not an exclusion but, rather, is an essential part of the insuring obligation. The language defines the scope of Imperial's insuring obligation in the first instance rather than to constitute an exclusion from a previously defined insuring obligation. Even if there could be basis for argument that policy exclusions are unenforceable, such an argument would be ill-put in this action.

Finally, on this subject, there is no summary judgment evidence that Taylor suffered any damage or harm by reason of the non-approval of the policy form.[7] All claims of McLaren based on non-approval are without merit as a matter of law under the summary judgment record.

### Other Theories of Recovery Asserted by McLaren

All of McLaren's theories of recovery are predicated on the soundness of one or more

---

7. The court does not need to decide whether Taylor, as a non-party to the contract, would have the right, in any event, to complain of non-approval of the policy form.

of her contentions that already have been decided against her in this memorandum opinion. Having disposed of each of those theories adversely to McLaren, the court has effectively ruled against McLaren on the rest of her theories, including her alleged claims of (a) coverage by estoppel, (b) breach of the covenant of good faith and fair dealing, (c) violations of rules and regulations of the Texas State Board of Insurance, (d) failure to inform City of Bedford and Taylor of the financial condition of Imperial, (e) violations of the Texas Deceptive Trade Practices–Consumer Protection Act, Tex.Bus. & Com.Code Ann. §§ 17.-41–.63 (Vernon 1987 & Supp.1991), (f) violations of Tex.Ins.Code Ann. art. 21.21 (Vernon 1981 & Supp.1991), and (g) breach of implied warranty to perform services in a good and workmanlike manner.

As a matter of law none of McLaren's theories of recovery has merit under the summary judgment record in this case.

### Considering the Main Thrust of Grace's Motion for Summary Judgment

■ There is another reason why Grace's motion has merit. The main ground of Grace's motion for summary judgment is that Grace's contacts with the policy and McLaren's claims against Taylor were insufficient to allow liability to be imposed on Grace even if the court were to conclude that Taylor has insurance coverage for McLaren's claims and that McLaren, through her assignment from Taylor, has causes of action based on the conduct of Imperial in failing to defend Taylor and in failing to pay McLaren's claims against Taylor. The court is of the opinion that this ground is meritorious and provides independent basis for dismissal of McLaren's claims against Grace.

Grace incorporated by reference in its motion for summary judgment an affidavit of Robert W. Grace that had been filed with defendants' notice of removal when this action was removed from state court. The affidavit, which is substantiated by Mr. Grace's deposition testimony, establishes without contradiction that Grace did not have a relationship to issuance of the policy or handling of the claims of McLaren against Taylor that would support any theory of liability against it. Moreover, there is no summary judgment evidence that any of the things about which McLaren complains as to Grace was a producing cause of any loss or damage suffered by Taylor.

The memorandum opinion and order signed by the court December 13, 1990, expressed the determination made by the court that Grace was fraudulently joined in this action, as it was pleaded by McLaren before removal to this court, for the purpose of attempting to defeat the removal rights of the remaining defendants. Since then, McLaren has filed her prolix amended complaint in an apparent effort to contrive a dispute that would prevent summary disposition of the action as to Grace, as well as the other defendants. Her amended complaint comes no closer to the mark than did the pleading it replaced.

### The "Non–Assignability" Ground Urged by Defendants in their Motions for Summary Judgment

■ Imperial and Special urge in their respective motions for summary judgment that McLaren has no right of action because the policy prohibited the assignment from Taylor to her upon which she bases her right to bring the action. The policy language to which they refer reads: "H. NON–ASSIGNABLE: The interest of the Insured under this policy shall not be assignable." Exhibit "G" to Amended Petition, page 3. This ground is without merit. *See Maneikis v. St. Paul Insurance Co. of Illinois*, 655 F.2d 818, 826 (7th Cir.1981). No Texas case has been cited by the parties, and none has been found, on this subject; however, the court has no doubt that a Texas court would hold that the policy prohibition against assignment of an interest under the policy is inapplicable to the assignment of causes of action that have come into existence after the loss has occurred.

### The Limitations Grounds of the Defense Motions

Each of the defendants relies on limitations as a defense. The court has conclud-

ed that, if limitations were the sole ground of the defense motions, summary judgment could not be granted as to the entire case, but that, in such an assumed event, limitations would be an appropriate ground for summary disposition of all of McLaren's theories of recovery other than her theory that Imperial had an obligation to make payment under the policy and that it, therefore, has a payment obligation as to the state court judgment. The court is not engaging in extensive discussion of the limitations grounds in view of the existence of the other, previously mentioned, clearcut reasons why defendants' motions should be granted.

■ However, the court notes that McLaren is in error in the reliance she places on Texas court decisions to the effect that the summary judgment burden is on the defendants to bring forward summary judgment evidence to negate the "discovery rule." McLaren's Response to Imperial's Motion for Summary Judgment, page 13. The "discovery rule" is a plea in confession and avoidance, and a plaintiff seeking to benefit from the rule has the burden of proof at trial to prove its elements "as it will generally have greater access to the facts necessary to establish that it falls within the rule." *Wood v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517–18 (Tex.1988).

■ A rule of Texas summary judgment procedure is that, in order to gain a summary judgment on the ground of limitations, the moving party has the burden to negate the discovery rule by establishing as a matter of law by summary judgment evidence that the plaintiff discovered or should have discovered the facts upon which the confession and avoidance plea is based far enough in advance of the filing of suit for the applicable limitations period to have elapsed between "discovery" and the filing of suit. *Id.* at 518, fn. 2; *Burns v. Thomas*, 786 S.W.2d 266 (Tex.1990). But, the federal courts are not bound by the state court procedural rules governing summary disposition. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 917 (6th Cir.1982); *see also Impossible Electronic Tech-*

*niques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1036 n. 10 (5th Cir.1982). The rules applicable here are those announced in cases such as *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *International Ass'n of Machinists and Aerospace Workers v. Intercontinental Manufacturing Co.*, 812 F.2d 219 (5th Cir.1986). In responding to the grounds of the defense motions urging limitations as a defense, McLaren had the summary judgment burden to adduce some evidence in support of her "discovery rule" plea of confession and avoidance. She failed to meet her summary judgment burden.

### *Special's Motion to Dismiss for Want of In Personam Jurisdiction*

■ The court has concluded that Special has had sufficient contacts with the State of Texas to authorize the court to exercise jurisdiction over its person and that such exercise comports with fair play and substantial justice. Special's contacts with the State of Texas have been significant enough that it should have reasonably anticipated being haled into court here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Schlobohm v. Schapiro*, 784 S.W.2d 355 (Tex.1990).

By contract with Imperial, Special assumed significant functions that normally would be performed by an insurer in relation to the insurance coverage in question. Nusbaum dep., pages 48–50, 64–66, 70, 144–145, Exhibit 3; Mitilier dep., pages 39–41, 47 & 77. Special's assumed name, address and telephone number were printed on the face of the policy under the words "Send all Notices of Occurrences and or Claims Directly to:". Exhibit G to Amended Complaint, page 1. The processing of McLaren's claim against Taylor was handled, at least initially, through Special. Nusbaum dep., page 121. On October 29, 1982, Emanuel Joseph Nusbaum, who was the major shareholder and president and chairman of the board of Special, became

licensed, through sponsorship of Special, by the State Board of Insurance of Texas as a non-resident agent "authorized to act as a Non–Resident Agent in the State of Texas." Nusbaum dep., page 110, Exhibit 7. The license was renewed on October 29, 1984, to remain in effect to October 29, 1986, and it again was renewed on October 29, 1986, to remain in effect to October 29, 1988. *Id.* The October 29, 1986, renewal showed that the license was to be issued to Mr. Nusbaum d/b/a Special Risks, Inc. *Id.*, Exhibit 7.

## ORDER

For the reasons given in the foregoing memorandum opinion, the court ORDERS that:

(1) Special's motion to dismiss for lack of personal jurisdiction should be, and it is hereby, denied;

(2) McLaren's motion for summary judgment should be, and it is hereby, denied;

(3) Imperial's motion for summary judgment should be, and it is hereby, granted;

(4) Special's motion for summary judgment should be, and it is hereby, granted;

(5) Grace's motion for summary judgment should be, and it is hereby, granted; and

(6) A judgment is to be entered denying McLaren any recovery from Imperial, Special or Grace, and dismissing all of her claims and causes of action against each defendant, with costs of court to be recovered by each defendant from plaintiff.