**GUARANTY NATIONAL INSURANCE COMPANY, Plaintiff,**

**General Casualty Company of Wisconsin, Intervenor– Plaintiff,**

v.

**Christopher B. McGUIRE, Marvin L. Schleicher, and Patricia Schleicher, Defendants.**

No. 98–4193–SAC.

United States District Court, D. Kansas.

Feb. 13, 2002.

Gregory A. Lee, Davis, Unrein, Biggs & Head, L.L.P., Topeka, KS, J. Franklin Hummer, Med James, Inc., Shawnee Mission, KS, for Plaintiff.

Stephen G. Dickerson, Katz Law Firm, Shawnee Mission, KS, Stephen G. Dickerson, Diane L. Waters, Wallace, Saunders, Austin, Brown & Encohs, Chartered, Overland Park, KS, Henry F. Sonday, Holbrook, Heaven & Osborn, P.A., Kansas City, KS, for Defendants.

### MEMORANDUM AND ORDER

CROW, Senior District Judge.

This declaratory judgment case comes before the court on the motion of defendants Marvin L. and Patricia Schleicher for attorneys' fees, expenses, and interest. This court previously granted their motion for summary judgment, finding that insurance coverage in the policy issued by plaintiff Guaranty National Insurance Company ("GNIC") was not barred by the public policy criminality defense. (Dk.89). The court found that attorneys' fees were owed to the insured under the policy, but that the parties had not sufficiently addressed whether the insured's assignment to the Schleichers obligated GNIC to pay their attorneys' fees in the declaratory judgment action. (*Id.*, p. 23). This issue has now been fully briefed, and the court finds that a hearing would not materially assist the court in its determination.

The facts underlying this motion are established in the court's prior order, and will not be repeated herein except as necessary. GNIC insured an automobile owned by Rick and Pamela McGuire, parents of defendant Christopher McGuire. The Schleichers' son was killed in an automobile accident while a passenger in McGuire's automobile driven by Christopher McGuire. In February of 1998, during the pendency of the underlying wrongful death case in state court, Christopher McGuire entered into an agreement with the Schleichers. In June of 1998, judgment was entered against McGuire in the wrongful death case. In November of 1998, GNIC filed this declaratory judgment action, and in April of 2002 dismissed McGuire from this action.

GNIC alleges that no attorneys fees are owed to the Schleichers. GNIC contends that the assignment from McGuire to the Schleichers was invalid because GNIC did not consent to it, that common law cases awarding attorneys' fees are distinguishable, and that no statutory basis for an award of attorneys' fees applies. The court addresses this latter contention first.

### I. Entitlement to Fees

■ The right to recover attorneys' fees is substantive and is therefore determined by state law in diversity cases. *King Resources Co. v. Phoenix Resources Co.*, 651 F.2d 1349, 1353 (10th Cir.), *cert. denied*, 454 U.S. 881, 102 S.Ct. 370, 70 L.Ed.2d 195 (1981). The "American rule," "which is well established in Kansas, is that in the absence of statutory or contractual authorization, each party to litigation is responsible for his or her own attorney fees. (citation omitted)." *Farm Bureau Mut. Ins. Co. v. Kurtenbach By and Through Kurtenbach*, 265 Kan. 465, 480, 961 P.2d 53 (1998). These exceptions are addressed below.

## A. Statutory Basis

K.S.A. § 40–256 provides that the court "shall allow the plaintiff a reasonable sum as an attorney's fee" in actions in which judgment is rendered against any insurance company who has "refused without just cause or excuse" to pay the full amount of a loss. "The mere fact that the question was determined adversely to the insurer does not *ipso facto* render the insurer liable for attorney's fees under the statute." *Smart v. Hardware Dealers Mut. Fire Ins. Co.*, 181 F.Supp. 575, 578 (D.Kan.1960).

The public policy issue in this case was one of first impression, and the court's decision was a close call. Assessing the strength or weakness of GNIC's case on the question of coverage, the court finds it was not unreasonable for GNIC to believe that there was no coverage. GNIC's assertion of the criminality defense presented a good faith question as to whether there was coverage, and no basis has been presented to support a finding that GNIC refused without just cause or excuse to pay. Therefore, attorneys' fees are not warranted under this statute.

## B. Contractual Basis

This court previously held that the policy language supports an award to the insured of attorney's fees and costs in this coverage litigation. *Guaranty Nat. Ins. Co. v. McGuire*, 173 F.Supp.2d 1107 (D.Kan.2001). *See Kurtenbach*, 961 P.2d at 62–64 (finding that by filing a declaratory judgment action, the insurance company was "requesting" the insured to perform certain acts for which it was required to reimburse the insured for reasonable expenses, and that an award of fees was necessary to give the insured the benefit of its bargain); *Upland Mut. Ins., Inc. v.*

*Noel*, 214 Kan. 145, 519 P.2d 737 (1974). No challenge has been made to that finding, and it will not be revisited herein. The issue presented is whether the assignee of the insured may recover such fees.

## Assignment

Schleichers' primary contention is that they stand in the shoes of the insured, McGuire, under the insurance policy because of the assignment from McGuire to them. As assignees of the insured, Schleichers have the initial burden to prove their entitlement to recover under the general provisions of the policy.

■ Kansas cases have held that an assignment to an automobile accident victim of an insured's claim alleging wrongful denial of insurance coverage is permissible. *See Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan.App.2d 153, 804 P.2d 1012 (1991); *cf., Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990) (insured's breach of contract claim for insurer's bad faith or negligent refusal to settle may be assigned to personal injury plaintiff). Cases have not addressed, however, the issue in this case, *i.e.*, whether a claim under an insurance policy for attorneys' fees can be assigned.

The agreement states that defendant McGuire "assigns to the [Schleichers] all claims, if any, he has against Guaranty National arising out of its denial of coverage for the accident or its failure to accept the ... offer to settle their claims for the policy's $25,000 bodily injury limit of liability." (Dk.96, Exh. A, p. 4). In exchange, the Schleichers agreed they would execute on any judgment they obtained only against GNIC, and not against McGuire's assets, wages, or other property.[1] (*Id.*)

---

1. This type of covenant not to execute was approved in *Glenn*, 247 Kan. 296, Syl. ¶ 6,

799 P.2d 79.

## Lack of Consent by GNIC

GNIC contends that the purported assignment is invalid because GNIC did not give written consent to it. GNIC relies upon language in the insurance policy which states:

This policy cannot be transferred to any person or organization without our written consent ... This policy contains all the agreements between you and us. Its' (sic) terms may not be changed or waived except by endorsement issued by us.

(Dk. 104, Exh. 2, p. 13, "Transfer" and "Changes" Sections.).

The court does not construe McGuire's assignment as a transfer of the policy itself which would require GNIC's written consent. As the plain language of the assignment states, McGuire did not assign his coverage rights under the policy as an insured, but only assigned any claims he may have against the insurer arising out of its denial of coverage. This is a significant distinction.

█ No Kansas case has been cited by the parties and none has been found on this subject; however, the court believes that a Kansas court would hold that the policy's prohibition against transfer is inapplicable to the assignment of causes of action that come into existence after the loss has occurred. Otherwise stated, this policy provision can only prohibit assignment of policy coverage, not assignment of an accrued cause of action. *See Maneikis v. St. Paul Ins. Co. of Illinois,* 655 F.2d 818, 826 (7th Cir.1981); *McLaren v. Imperial Cas. and Indem. Co.,* 767 F.Supp. 1364, 1377 (N.D.Tex.,1991); *Brown v. State Farm Mut. Auto. Ins. Ass'n,* 1 Ill. App.3d 47, 272 N.E.2d 261, 264 (1971). The assignment is thus not barred by the policy language cited above.

## Rights of Assignor

█ GNIC additionally contends that as assignees of rights under a contract, Schleichers have no greater rights than those of their assignor, McGuire. This premise is well established in Kansas law. *See OXY USA, Inc. v. Colorado Interstate Gas Co.,* 20 Kan.App.2d 69, 79, 883 P.2d 1216 (1994). It is GNIC's application of this principle that is puzzling to the court.

As the court understands the argument, GNIC contends that McGuire had no need to defend the declaratory judgment action, since he had no personal liability in the case at that point due to the prior agreement not to execute, and that McGuire was in fact dismissed as a party to the declaratory judgment action prior to summary judgment motions being filed therein. Based upon these undisputed facts, GNIC alleges that because McGuire had no need to incur attorneys' fees in defense of the declaratory judgment action, Schleichers are entitled to no attorneys' fees incurred in defense thereof.

█ The court finds this rationale, which focuses on events subsequent to the date of assignment, to be strained. It is the date of the assignment which controls for purposes of determining the parties' rights. *See OXY USA,* 20 Kan.App.2d at 78–79, 883 P.2d 1216, and authorities cited therein (" '[I]t is axiomatic that an assignee of a promissory note stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment.' ") An assignee takes subject to all equities and defenses existing between the assignor and the debtor prior to the notice of assignment, but not those arising after notice of the assignment. *Cadle Co. II, Inc. v. Lewis,* 254 Kan. 158, 164, 864 P.2d 718 (1993) (quoting from *Thweatt v. Jackson,* 838 S.W.2d 725 [Tex.App.1992] ).

On the date of the assignment, McGuire had a contractual right to attorneys' fees, which right was assigned to Schleichers. The court finds no rationale supporting GNIC's invitation to construe McGuire's rights, and resultingly Schleichers' rights, in light of events which occurred subsequent to the assignment.

■ The court finds the Schleichers' attorneys fees incurred in defense of GNIC's declaratory judgment action to be a claim "arising out of [GNIC's] denial of coverage for the accident," which was validly assigned by McGuire to the Schleichers. Accordingly, because GNIC has shown no reason why Schleichers are not entitled to the attorneys' fees sought, attorneys' fees shall be awarded to them.

## II. Amount of Fees

In determining a reasonable attorney's fee, the district court first calculates the "lodestar" figure, that is, the product of multiplying reasonable hours by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This "lodestar amount" is "the centerpiece of attorney's fee awards." *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The lodestar figure "is the presumptively reasonable fee." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1493 (10th Cir.1994). The lodestar amount is then adjusted upwardly or downwardly to reflect other factors when necessary.

■ The first step in calculating the lodestar is to determine the number of hours counsel reasonably expended on the litigation. *See Case v. Unified School Dist. No. 233, Johnson County, Kan.,* 157 F.3d 1243, 1249 (10th Cir.1998). The burden is on the applicant to show that the hours claimed are reasonable. *See Deters v. Equifax Credit Information Services, Inc.,* 1998 WL 12119 at *3 (D.Kan. Jan.6, 1998) (quoting *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

Determining the number of hours reasonably expended in this case is particularly difficult, given counsel's concession that in the usual course of business he does not keep contemporaneous time and billing records, and did not do so in this case.[2] Dk. 96, Exh. C, p. 3. This is most curious, given the court's previous indication that attorneys who work on a contingent fee basis should keep time records. *See, e.g., Bergeson v. Dilworth,* 875 F.Supp. 733, 737 (D.Kan.1995).

■ Further, to satisfy the burden of proving a reasonable fee, counsel must keep contemporaneous and detailed records of time. *Sussman v. Patterson,* 108 F.3d 1206, 1212 (10th Cir.1997); *see Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983) (party claiming attorneys fees must be prepared to establish hours by contemporaneous time records if requested by trial court).

■ Counsel's failure to keep contemporaneous records would warrant a denial of attorneys fees altogether. *See Anderson v. Secretary of Health and Human Services,* 80 F.3d 1500, 1506 (10th Cir.1996) (district court may totally deny attorneys fees where no contemporaneous records kept); *Carter v. Sedgwick County, Kan.,* 929 F.2d 1501, 1506 (10th Cir.1991). Alternatively, the court may significantly discount the requested attorney hours

**2.** Specifically, counsel states in his affidavit that he "did not keep or maintain comprehensive, contemporaneous records of the time I have spent representing the Defendants in the pending action, however, I did contempora-neously track much of the time I spent representing my clients in this case." The court fails to understand the apparent distinction between contemporaneous recording and contemporaneous tracking.

where an attorney fails to keep meticulous, contemporaneous time records. *Id. See Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir.1998) (quoting *Ramos,* 713 F.2d at 554); *Hensley,* 461 U.S. at 432, 103 S.Ct. 1933. *See, e.g., Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir.1995) (approving reduction of attorneys fees by 35 per cent); *Von Clark v. Butler,* 916 F.2d 255, 259–60 (5th Cir.1990) (affirming more than 60 per cent reduction); *Shrout ex rel. Arnold v. Holmes,* 2001 WL 1526277(2001) (finding 50% reduction in hours warranted). This is because "reconstructed" time records lack accuracy and offer the court only minimal assistance in determining what the amount of a reasonable fee would be.

Counsel has not explained how he has "reconstructed," for multiple dates and multiple timekeepers to a tenth of an hour on very specific dates, the documents on which his application is based.

Nonetheless, because opposing counsel in this case has neither complained of counsel's lack of contemporaneous time records nor asserted that his own hours incurred in this case were any less, the court will find that some fees are appropriate in this case. The court has reviewed the reconstructed records, and does not find the hours set forth therein to be unreasonable or excessive.

**Hourly Rate**

■ Counsel seeks an hourly rate of $175.00. "The establishment of hourly rates in awarding attorneys' fees is within the discretion of the trial judge who is familiar with the case and the prevailing rates in the area." *Lucero v. City of Trinidad,* 815 F.2d 1384, 1385 (10th Cir.1987) (citation omitted). A court is to look "to the prevailing market rates in the relevant community" in calculating a reasonable fee. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The relevant community is the area in

which the litigation occurs. *Ramos,* 713 F.2d at 555.

The burden is with the applicant "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. 1541. Defendant has not submitted any evidence of the prevailing rates charged by attorneys in Topeka with skill, experience and reputation comparable to his own, but has shown that he has charged $175.00 per hour for mediation services.

■ Where, as here, a district court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, use other relevant factors including its own knowledge to establish the rate. *Case,* 157 F.3d at 1257; *See Lucero,* 815 F.2d at 1385. The court can take notice of the prevailing rate of fees in this community, *see e.g., Ware v. Sullivan,* 1991 WL 42293(D.Kan. Mar.6, 1991); *Franz v. Lytle,* 854 F.Supp. 753 (D.Kan. 1994), and will do so here.

■ The court believes that $175 per hour is adequate and appropriate for this attorney in this case. The "lodestar" figure for defendant's attorney's fees is thus $ 27,107.50 (175 per hour × 154.9 hours). Neither party has suggested that other factors, such as those listed in *Johnson,* should alter this amount and the court finds that the lodestar amount needs no adjustment. Accordingly, defendant's motion for attorney's fees will be granted.

**Interest**

Schleichers additionally seek over $35,000 in interest on the underlying wrongful death judgment, which they contend is owed pursuant to terms of the

insurance policy. GNIC does not dispute that interest is owed, but alleges that the amount is capped, under the policy, at $25,000. (Dk.104, p. 10–11).[3] The court agrees.

Under the policy, the cap on post-judgment interest is set at the "policy limits." The policy states:

> will also pay post-judgment interest on the amount of the judgment up to the policy limits. We will pay this interest from the day the judgment is entered until we have offered the other party the amount of the judgment up to the full limits of liability available under this coverage.

(Dk.104, Exh. 2, p. 3). It is undisputed that the applicable policy limit is $25,000.

 Schleichers allege that the above provision is ambigiuous and should be construed against its drafter, GNIC. Whether an ambiguity exists in a written instrument is a question of law to be decided by the court." *Kennedy & Mitchell, Inc. v. Anadarko Production Co.,* 243 Kan. 130, 133, 754 P.2d 803 (1988). The court finds no ambiguity in this language, and that its plain meaning compels the conclusion that GNIC cannot be obligated to pay more than $25,000 in post-judgment interest. Interest in the amount of $25,000 shall thus be awarded to the Schleichers.

### Expenses

Schleichers seek $1,467.14 in expenses, which GNIC does not dispute. The court has reviewed the expenses claimed, and finds them to be reasonable.

IT IS THEREFORE ORDERED that defendants' motion for attorneys fees is granted in the amount of $27,107.50, that defendants' motion for post-judgment interest is granted in the amount of $25,000;

and that defendants' motion for expenses in the amount of $1,467.14 is granted.

---

**3.** GNIC has clarified that its position is not that their policy exposure for the policy limits, interest and attorney fees totals $25,000, as defendants apparently thought.